Good morning, your honors. My name is Matthew Schindler. I represent David Ovist. I represented David Ovist during the trial of this matter. I'd like to, hopefully, reserve a couple of minutes at the end. I can also see I've got a lot to learn about habeas. When the court looks at the nature of the right to a jury trial, I think there are two fundamental aspects to that that are implicated by this appeal. The first one of those fundamental rights is the defendant's right to present his version of the events, to testify on his own behalf, and to tell his story to the jury. The second significant right that's implicated by this appeal is the right to cross-examination, the right to explore with every witness called against a defendant in a criminal case, their biases, their interests, their motives, in a particular respect. In this case, both of those rights were affected by errors committed by the district court, induced in many respects by an overly aggressive government trial strategy, one that intended to limit the defendant from providing an explanation, one intended to limit the defendant from putting on relevant exhibits, putting in relevant testimony, and explaining the 60 allegations of falsity that the government made in this case. If due process in the context of the federal criminal trial means anything for a defendant, it certainly has to mean that he has an opportunity, sitting in front of a jury, to explain what occurred. And if the allegations the government makes are, in a particular loan, the information about an income figure was wrong, the information about the primary residency was false, the information about the person's employment was false, and our defense is, well, I believe those representations, then the opportunity to testify on one's behalf, to present one's evidence, I get to explain why I believe those things. Can you focus for me on what evidence that the judge excluded? Put aside the complaints in the civil case for a second, because those don't bear on. Understood. What evidence the judge excluded and why the judge was incorrect in saying that it was cumulative? Well, some of this goes to the very nature of what the word cumulative means. So I think at the outset, if I speak words, and the words that I am speaking are dependent upon a document that I reviewed, then that document should be admissible without it being cumulative. That I spoke the words are just words. And in order to corroborate those words, I have some right and some ability to put in a document that would enable me to support the opinion or the words that I just spoke to the jury. Do you focus on some particular areas? Absolutely. Yeah, absolutely. So one of the issues that you see, the government produced a kind of chart that outlined every one of the false representations that they were relying on in the case. That was submitted to the jury, it was paid for the jury to understand the was whether or not these homes that people were purchasing were going to be their primary residences. So if you're getting a loan for a commercial piece of real estate, the underwriting quantum and analysis that's done on that is different than if you're buying a home for yourself to live in. And so that's significant, apparently, to the lenders to know. One of the items of evidence, of documentary evidence, that Mr. Ovis relied on in believing the representations that he received from his borrowers were what are called insurance binders. And these insurance binders are confirmations that Mr. Ovis would receive from lenders, from insurance companies, from third parties, indicating that the borrower had independently gone and obtained homeowners insurance. So this was a document that confirmed in his mind the belief that he had when these people told him, we're going to live in this house. So this was a document that he got independently. So his defense was, I believe that these were really these people's houses. And the reason I believed it was because they independently went and obtained homeowners insurance on their own behalf. Well, why would you get homeowners insurance or get a document proving you have homeowners insurance if it isn't going to be your home? And so this was one of the corroborative kinds of documents in this case that we were denied the opportunity to. Can you tell me where in the record I can find your proffer of the insurance contracts? I can't say specifically. I know that there was a point in time, and I'd have to go and look at my briefing. I'm trying to find the contracts in the record. Where would I find the contracts in the record? The contracts were not specifically submitted. We attempted to submit them to the trial court and the judge during one of the recesses. And the judge assured us that the documents themselves were part of the record and that we would be free to appeal these issues when we got them from the court. I don't know what the judge told you, but here's my difficulty. You're now asking me to say that exclusion of a document was error, right? That's correct. And I'm trying to find the document so I can look at it and figure out what it says. And I can't find it. Is it in the record? It is part of the supplemental record that was submitted in regards to my reply brief in this matter. So there were a series of insurance binders that were submitted as part of a supplemental record in this case that reflected the documents that we tried to get in at trial. Right. They were submitted on appeal. Correct. But I can't find a proffer in the record below these documents. Your Honor, it was a situation where we were in the midst of arguing with the judge essentially about the admissibility of these documents. They had all been presented to the court pre-trial. Judge Brown was very keen on having us work as much as we could through the evidence in the case, and so the documents themselves had definitely been presented to Judge Brown. And I'm not arguing, I'm not for the moment suggesting that you're precluded from raising this issue. I'm just trying to figure out procedurally where we are. There wasn't a pre-trial motion in limine, was there, on this? To exclude it or to admit it? Yeah. Either way. No, there was not. I mean, essentially there was a number of government exhibits that we had been provided in advance that were pre-admitted, and then we went through a process during the trial to review defensive exhibits, some of which were pre-admitted and some were not. Okay, so I just want to walk through what happened in front of Judge Brown, and don't forget, if you haven't learned anything this morning, it's don't worry about the clock. I stopped looking at it. Don't worry about the clock in front of us. If you're standing in front of a land circuit, worry about the clock in front of somebody else. Yeah. Thank you. So you don't have to rush your answers, I guess is what I'm saying. Judge, there's no pre-trial motions regarding the admission or inadmissibility of these insurance contracts. Your client takes the stand and says essentially what you said, which one reason that I thought these were single family residences, is I had seen insurance contracts, insurance binders. Do you then attempt to say, and you want to admit one of the insurance binders, right? Correct. I assume you say to your client or something, is this one of the binders you saw? Objection. The judge says, I'm not going to let you put it in the binder. Correct. It's cumulative. It's cumulative to the testimony. Right. And so I'm trying to figure out whether it is cumulative to his testimony and what it actually says. And I need to look at a proffer somewhere in the record of the binders and your argument about why the binders do more. And I must admit, as a long record, so I may have missed it, but I'm having trouble finding it. I find your argument directly. Your Honor, this ought to come in. I've proffered it. But where is it? The excerpt of record numbers that I believe were assigned to it were 3032 to 303. I'm sorry, 3032 to 3036. Okay. So that's where they would be, I believe, at this point. But you don't think the actual binders themselves are in the trial court record? No, I don't believe so. We tried during one intermission to suggest to the judge that, you know, maybe we need to make some additional proffer of information here so that the record is more clear, and we were assured that it was abundantly clear. Now, I don't have the ER in front of me. A lot of stuff is upstairs. I'm reading your brief on page 37 where you're talking about the insurance binders and so on. And I'm now at the bottom of page 37 where the judge allows the question to go forward about insurance binders and whether it would have made a difference. And the witness says, yes, of course it would have made a difference, yes or no, yes. What was it? The insurance binder came across this file. I wish I could see the document. Now, what was asked after that is to say, did you pursue, or I guess Mr. Lewis, did Mr. Lewis pursue and say, well, okay, why did the insurance binder make a difference to you? Because the quotation cuts off right here. No, and I don't believe he was allowed to ask any further questions regarding that issue. I don't, Your Honor, it would be unfair for me to guess. I don't recall specifically. The guess is, I mean, Mr. Lewis is clearly trying to get him to say, why did the insurance binder make a difference? And he says, did it make a difference, yes or no? Then the court says, what was it? The witness might, I'd be astounded if Mr. Lewis did not follow that up with, would you explain to me why that made a difference? Because that was totally the point. And, again, I don't remember specifically, but I certainly think that at a certain point Mr. Ovis was allowed to explain to some extent. I'll go back and look and see what happened. Yeah, why you relied on those. But, again, our position remains that, you know, if you're saying you rely on a document in a case with hundreds of documents where the government's been able to put in everything they want, that at a minimum you should get to put in one document without it being held cumulative. You know, other than these binders, what other errors were committed by the trial court? In terms of the limitations on Mr. Ovis' testimony or in terms of the mistakes? The ones that you're asserting the constitute refers to. Well, I mean, we have a number of them. At one point in time, one of the critical informants in the case was a man named Don Kaslowskis, and we had documents that showed that Mr. Kaslowskis was taking sort of extralegal actions, both in a representative capacity because he had worked for a short period of time for Mr. Ovis at Oregon Mortgage Services, and simply because he was a criminal and a fraud. And so there were deeds of trust that we had that he had executed without people's permission that we intended to use to show through our client that there were actions that Mr. Kaslowskis were taking that were completely independent of Mr. Ovis and Mr. Ovis had no knowledge of. Again, as a way of defending the conspiracy allegation that existed in this case. You're not working in concert with someone. If they're taking actions you don't know anything about. Excuse me. So that's one of the kinds of documents that we're talking about. And you're not asserting that the court denied any form of cross-examination in the impeachment. You're just saying that the amount and extent of the impeachment was cut off. Well, I think it's important for me to distinguish. With respect to the lender witnesses that testified in this case, we were denied meaningful cross-examination of them entirely. I mean, I completely adjusted my strategy at trial based on what the court's pretrial rulings were, which was these civil complaints and the government's allegations against these lenders, you're not allowed to use. And so I took the position during the course of trial that these things were material to them and were important to them and that Dave Ovis never would have engaged in this conduct knowing what he knew about the lender's process and how they engage in things. That's the defense that was presented based on the limitations that we received. With respect to the other witnesses in the case, I can't make that argument. You didn't completely limit our cross-examination. I got to cross-examine Jake Shoup extensively. Did I want to do more? You bet I wanted to do more. I want to get back to the limitation that you perceived on your cross-examination. When I reach Judge Brown's order, it says, I'm not going to let you admit these civil complaints. We're not going to put them into evidence. And I'm not going to let you ask them about the complaints. But it didn't, she didn't, she said, I think she seemed to leave open whether or not you could ask the witnesses whether or not they actually looked at this stuff. And your position on appeal is, yeah, but they would have lied. I mean, essentially that's what your brief says. I couldn't really ask them because they just would have said, oh, sure, we do, and I wouldn't admit it. But I thought what Judge Brown said was, ask them, see what they say, and then we'll get into the issue, with respect to a specific proffer, of whether or not you can follow up on that by virtue of the fact that the government had made charges without introducing the specific complaint. Is that an unfair reading of what Judge Brown said? Well, I think you could read Judge Brown's order several different ways. My sense of standing in front of her over the course of the hearings and the discussions that we had on these issues was that I was not going to be talking to any of the lenders about any of their malfeasance. Well, her order doesn't say that, though. Her order says you can't use the complaints or ask them about the civil cause of famine. Let me finish, and maybe you can help me on this. Sure. She then goes on to say, the government also raises a 403 objection to this topic, but we can address that in the context of a specific proffer later on if you want to do that. And I don't see a specific proffer later on. In other words, I don't see you ever saying to the witnesses, look, the truth is you really never look at this stuff, do you? And if they say, oh, we always look at it, then it seems to me Judge Brown left open the possibility of you saying, haven't there been any number of investigations and charges that you don't? In other words, I thought it was the document she was keeping out, not the topic. That's my question. It was evident to me it was the topic. And there was a discussion between Mr. Lewis and Judge Brown that I specifically recall, and I believe it's cited in my briefing somewhere, where she says you're not going to go there, right, Mr. Lewis? And Mr. Lewis says the court has ruled that we are not. And so we understood, sitting in those seats and in that place, that that was a topic that was off limits. And so my view of cross-examination generally is that I don't get to make up stuff and ask somebody about it. I've got to have a good faith basis for doing that in the first place. And my good faith basis for doing that was what the government had alleged these lenders had done. But that made you have a good faith basis for asking the question. So ask it. Yeah, but I wasn't allowed to ask it. I'm not sure you were not allowed to ask the question as to did you actually look at the numbers, did you actually care about the numbers. This is what I have from January 8, 2013. The court says, we know the government is going to be calling witnesses who offer the standards, the underwriting standards for the various lenders in the case. And it seems to me that that may be an area for cross-examination with respect to what actually would have a natural tendency, objectively, to influence a decision-maker in the same shoes as these lenders without calling it reliance. It seems that she was leaving the door somewhat open to introduce evidence that may have affected their decision-making. And so I don't see where the door was totally closed on cross-examination with respect to this area. I think it was. I mean, I understand what you're saying. But I think that if you take the overall course of the various times that we discussed this issue from the job, discussed this issue with the judge, it wasn't just a single instance. That would happen to be one situation where the government was discussing with the court the circumstances of what they intended to prove. I don't think the limitation on me was whether or not I could have asked the question, did you actually follow your guidelines? I don't have any doubt that every one of those witnesses would have said yes. The power in that cross-examination wasn't going to come from that question. Well, that's the reason I asked the question. I see Judge Brown as the part of the ruling that gives me some pause. Since the government's raised 403 objections, I'm not going to rule on those now. I will only rule on those later in the context of a specific offer of proof or a specific proffer. And I thought what I read that to say was, look, I haven't entirely excluded this, because why would I worry about a proffer later and a 403 objection? I've excluded the documents, but if this comes up in cross-examination and you want to ask them, were you aware that the government had done X or Y or Z, perhaps I'd allow it. At page 24 of my brief, there's a colloquy between Mr. Lewis and the court, and I think that it's fair to say that both of us came away from that. You're not going to be talking to the jury about systematic fraudulent conduct as alleged by other branches of the United States government. We're not going there, right? The court has ruled we are not. Very good. I'm glad we're on the same page. So I didn't come away from that thinking that I had a whole bunch of room to move. Can I ask you one more question about these civil complaints? I read the civil complaints as saying, and leave aside whether or not they are statements of a party opponent, I read the civil complaints as saying, this is really material information lending institutions, and you have violated federal law by not paying attention to them. How does that help you? Well, because remember, reliance is not part of the case. Materiality is whether a reasonable lender would look at this. And the federal government is saying, is being pretty consistent, these complaints, it's saying, this is important stuff. And you oppose it. They're saying, this is important stuff. You guys aren't looking at it. And what you don't have is a response from the banks that say, oh, no, it's unimportant. We never look at it. It's not material. They can test in the case in which they get settled. So I'm not sure, as a punitive matter, why these demonstrate the absence of materiality. They demonstrate conduct that the government claims violates federal law. Put aside whether or not the FFHA, whatever it is, Fair Housing Authority, is. . . One of the governments, the government. Whether they're the same government. The president, from time to time, complains about what other parts of the government do. So I'm not sure that he controls the whole government. But put those aside for a second. Assume that they meet foundational requirements and they're not hearsay. Why do they establish, how do they establish non-materiality? Because of the nature of the government's proof. So the government, you know, the standard for materiality is, is it naturally capable of influencing somebody? The government didn't prove materiality based on that standard. They proved materiality in this case based on the guidelines. Based on the specific guidelines that, in the complaints, the government said the lenders didn't follow. So it wouldn't have been nearly a strong argument, but for the nature of the government's proof in this case. And even the prosecutor was struggling to explain how he wasn't arguing reliance. But aren't the allegations in the other cases that these are, these are the kind of stuff that should naturally influence your decisions and you violated federal law by not, by not. I think you're, I think you're reading of some of those other cases as certainly accurate, and I don't dispute that. It's the proof that was offered in this case. Countrywide came in and testified, these are our guidelines. These are our underwriting standards, and that's what makes this material. Not it was naturally capable of influencing us. These are our guidelines. We followed our guidelines. It was material. And the government's complaints say it wasn't. Let me ask it this way. Because I understand what goes on in these cases, and it sounds as though it went on in this case, too. The lender did want these numbers. The numbers were material to them. What they didn't care about was whether the numbers were true. Yes, I think that's accurate. I think they needed the blanks on the applications filled in in order to sell the law. So you're never going to get an answer out of the bank. We don't care what the numbers are. The answer you're going to get is, yes, we care what the numbers were, and then you ask the next question, and if they answer truthfully. The next question is going to be, did you care very much about whether the numbers were true? And the true answer would have been, at least for some of these lenders, no, we did not. But it's not that the numbers were immaterial. The truth of the numbers was going to be immaterial to them. And, of course, it was immaterial to many of them because they were sending it downstream to somebody for whom it did matter a lot, but they trusted the bank. Yes, they just sold them. All they were looking for was something to commoditize and sell. And that's what it comes down to. So the materiality thing, I think, is basically satisfied by the fact that these numbers were material. Whether they were true was quite a different question. And the people down the road cared a lot about whether they were true. I don't disagree. I don't disagree. It's not whether or not materiality could have been proved. It was whether or not we had a sufficient ability to challenge it, whether we had available to us everything we should have to challenge that. That's the argument that I'm trying to make. Okay. Unless you're from the government, I will give you an answer. Thank you very much. Good morning. May it please the Court. I'm Hannah Horsley on behalf of the United States. I think several of the questions have honed in on the exact issues here. There's no question that this defendant put in a robust defense and that his defense was not precluded by the evidentiary rulings of the district court here. He testified extensively. His testimony spanned more than a day. It covers more than 300 pages of the transcript, just his direct testimony alone. He admitted 199 defense exhibits, far more than the government. And he got those in not only during the course of his own direct testimony, but also through his cross-examination of a number of the government's witnesses, including the lender witnesses. And there's really no place in the record where it's established that the district court's really run-of-the-mill evidentiary rulings were an abuse of discretion, let alone precluded his ability to put on his defense. What about these insurance finders? Do you think that the court got it wrong in terms of excluding these insurance finders to corroborate what the defendant was otherwise testifying to? No, I think the court absolutely got it right. And it's – I mean, what happened just procedurally, they really were not before the court. They weren't part of what was marked and reviewed to be pre-admitted. What happened at trial was because the defense didn't want to preview all of its exhibits to the government ahead of time, which was totally understandable and the court allowed, we had a practice that each night before the government would put on the witnesses for the coming day, defense would give us a heads-up about which exhibits they wanted to potentially present to those witnesses so we could review them, agree to whatever was pre-admitted, let them know if we had any objections based on foundation, hearsay, all of the relevance, other basic objections. And you objected to the introduction of these finders? Well, these finders really never were part of that process. It was kind of late in the game while Mr. Ovis was testifying that they appeared. And as Mr. Schindler conceded, they really weren't brought before the court in any kind of substantive fashion to evaluate their relevance. So the government simply was looking for a foundation to be set to establish why they were relevant and what they showed. And I will bring to the court's attention in the excerpts of record the testimony surrounding the insurance binder that Mr. Schindler identified in his brief. If the court looks at ER 742 through 745, you can see the whole colloquy that went on about the insurance binders. And it's clear that the defendant, in being questioned by his counsel, testifies that he was led to believe that it was going to be an owner-occupied  application, the appraisal, which both indicated that it was owner-occupied. He says all of the documents were signed as owner-occupied. Then he adds the insurance binder reflected the address on there, which would have been the residential address. The questioning goes on. He's later asked, you mentioned the insurance binders. He explains again that those reflect the address on three separate places before we even get to the binder attempting to be introduced. He's already testified that the insurance binder reflects the address of the property. He then talked a lot about what the insurance binder is, what kind of insurance was covered. Again, that it reflects the property address. And then it starts going into kind of the procedural, how did these get created? These get generated by his office. They put the address on there. So he clearly got out all of his testimony about the insurance binders and what they reflected. Given that the government's theory was that this person is someone who misrepresented, that essentially applied and is not capable of being believed, wouldn't this independent form of corroboration have been important to allow the defense to assert an offer of more concrete defense? Not on the record in this case because he was able to get in the evidence that the insurance binders showed the primary residence address, and that was never disputed. That issue was never in dispute. He also got in, as the district court summarized in its opinion denying the motion for new trial, a number of other documents throughout the entire trial that showed occupancy, that showed this primary residence issue being established. Those included affidavits of occupancy, certificates of occupancy, an occupancy writer in one instance. So there's really multiple evidence throughout the trial establishing that specific set of issues of whether he could have made a misrepresentation that these were primary residences. So can I get back to the question I asked your opponent where the, where no binder was marked as an exhibit for identification? Correct. Do you, you're not disputing, I take it, that the binders attached to the library were the ones that he was, or exemplars of the ones that they were attempting to? I'm not, but I honestly don't have a basis in the record for confirming that one way or the other. During the trial and in the post-trial briefing, they talked about five different insurance binders. What they submitted to the court, the ER sites that counsel gave of 3032 through 36, include only four insurance binders. I will say three of those four are about a property or properties for, that were uncharged. There was a 404B witness who. That's why I asked the question. I was trying to figure out which binders match up to the testimonial that you went through here. And it's hard to tell that from the record in this case because they really weren't presented in a way that gave the court a full opportunity to evaluate them and rule on them. But I'm prepared to concede that the examples that are in the supplemental excerpts of record were among those that would have been presented below if they had said. Do you agree with the defense counsel that Judge Brown shut the defense down from trying to offer anything related to the civil complaints? No, I don't at all. I do agree that she clearly ruled them inadmissible as admissions of a party opponent. So clearly the complaints themselves were not going to come in as direct evidence to counter materiality. But all of your questions were correct that the court clearly left it open the possibility that they could make other use of those complaints or facts surrounding those complaints to cross-examine lender witnesses at trial or in other ways. And they never sought to do that. They absolutely below waived any opportunity to cross-examine to establish bias or interest. As they now argue on appeal, and particularly in the reply brief, because they never did seek to do that below. And the court not only invited the possibility of some way this could come in on cross in the excerpt that Judge Curiel read from the hearing on the motion to reconsider, but again in both of her written opinions ruling on those pretrial motions, both the original motion and the motion for reconsideration, they both invited the possibility that this could come in in some other form and the defense just never sought to do so. What if Judge Brown got it wrong with respect to excluding these civil complaints? These civil complaints, as I understood it, are only related to a certain number of lenders. Countrywide was the focus in the Southern District of New York, and then with respect to the SEC, I believe countrywide was the main focus. But it didn't cover all of the banks that were the victims or that were the subjects of the fraud. My question is, since she got it wrong as to excluding that as to those banks, what effect, if any, would that error have on the accounts that don't have any connection to these civil complaints? Well, you're correct. It would have no effect whatsoever, because certainly we had a number of lenders represented in accounts that we charged in the indictment that were totally unimplicated in those civil complaints. And we never got to the point of having to parse out which counts may be affected and which wouldn't be because it was just so clear from her initial ruling that the complaints themselves were precluded, both because they weren't admissions of a party opponent, but also because they weren't relevant to the objective materiality standards. They really would have necessarily been relevant only to reliance on kind of the subjective view of the lender, the conduct of the lender, which was just precluded as a matter of law under that objective standard. So I think the record is clear that this defendant received a fair trial, and we would ask that the court affirm both the conviction and the sentence. And unless there are any other questions, I'll submit on the briefs. I don't think so. Thank you. Why don't we commit it on the clock if you want to respond? In response, I would say that, again, we have a disagreement. We disagree about the scope of the order that Judge Brown provided us. The other thing that I would say is that with respect to these civil complaints, it wasn't just countrywide. J.P. Morgan Chase, who was one of the lenders in this case, there was a complaint against them. Taylor Bean and Whitaker was another one of the lenders. There was a complaint against them. Wells Fargo was another one of the lenders. There was a complaint against them. So this isn't simply a matter of one single count was impacted or even several counts were impacted. How many would have been imposed? I couldn't tell you the count, but I would say that of the 12 counts that he was convicted of, certainly eight of them, nine of them, ten of them, the majority of them, without a doubt. So what's your view as to what would happen if we followed your line of thinking and found that there was reverse glare? Would we just limit ourselves to reversing conviction on those counts and allow the other convictions to stand? Your Honor, obviously, there's a whole range of options available to you. But from my perspective, I think that I could have been cross-examining the lenders that didn't even relate to those complaints about the same kinds of allegations. So there's a possibility that the kind of cross-examination that could have been undertaken would have affected the jury's verdicts regarding the lenders that weren't named in those complaints. And, you know, these weren't complaints that were settled without admissions. These were complaints that were settled with the banks admitting that they did exactly what the government said. When I tried to track this through, I saw that these were consent decrees. Without admissions, a fault. Where in the record can I find something that indicates that the banks admitted to that? I apologize. I don't have it on the top of my head, but I'm happy to provide that information because I know I've read. Is it in the record? Put aside from what you've read. No, no, it's on the record. There's nothing in the record that indicates that the admissions have been done. And those settlements hadn't come through at the time of the trial. Let me ask you one more question about the insurance binder. I finally found the part of the record that did that, which is not easy. Your client was on the stand, and he was allowed to read from the insurance binder. Correct. He was allowed to look at it. He was allowed to look at it. No, Justice Graham was very unconsistent about not reading from documents. Well, but let me. Because the document speaks for itself. I've got the reports of the record, and the document is put in front of your client. And he said, were you aware that there was an insurance binder here? Yes. What did you rely on in the insurance binder? I relied on the part that said it was a homeowner's insurance policy, and it has the address. And he goes through the whole thing, and then you offer the document. Your side offers the document. And the objection is, Your Honor, he's already read from it. Why do we need to add the document to the record? The argument is, well, it buttresses his testimony. And the judge says he's already read from it. I don't see any reason to put another document in the record. What's wrong with that? In other words, nobody ever said, oh, that's not what it says, the document. It wasn't just that he was asked about the insurance binder. Let me finish. It wasn't just that he was asked about the insurance binders. The binder was put in front of him. The judge allowed the document to be put in front of him. He was allowed to look at it and describe why it supported his case. There was no contest by the other side that the document didn't say homeowners' insurance, his property, et cetera. Given that, Howard, why was there a violation of due process by not adding the document to the record? That was one instance. The court read. And another instance where Mr. Ovis was trying to discuss the insurance binder and was essentially pleading, may I look at the document? May I see the document? So in that instance, yes, in fact, he did have a chance to look at the document and discuss it. But, again, Mr. Ovis was a liar. I mean, that was the government's case. He was a liar and a fraud. So for us to have a concrete document not generated by him that didn't depend on anybody else that the jury could have handled and looked at, that was the evidence that we wanted, and we thought that was the appropriate evidence in the case. Thank you. Thank both sides for helpful arguments. The case of United States v. Ovis is now submitted, and that completes our argument calendar for this morning, and we are adjourned.
judges: Curiel, Fletcher, Hurwitz